IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALLACE T. PREITZ, II, | : | CIVIL ACTION |
|     Plaintiff, | : | |
| | : | |
| v. | : | No.: 11-cv-44 |
| | : | |
| AMERICAN AIRLINES, INC. and | : | |
| AMERICAN AIRLINES, INC. PILOT | : | |
| LONG TERM DISABILITY PLAN and | : | |
| AMERICAN AIRLINES, INC. PENSION | : | |
| BENEFITS ADMINISTRATION | : | |
| COMMITTEE, | : | |
|     Defendants. | : | |

### MEMORANDUM

**SITARSKI, M.J.**                                                                                                          **January 14, 2015**

Presently before the Court is Plaintiff's Consolidated Motion to Compel Discovery (ECF No. 43), Defendants' Response thereto (ECF No. 45), and Plaintiff's Reply (ECF No. 48).  For the reasons set forth below, Plaintiff's motion will be GRANTED IN PART and DENIED IN PART.

### I.      FACTUAL AND PROCEDURAL OVERVIEW

Plaintiff, Wallace T. Preitz, II, worked as a pilot for American Airlines, Inc. ("American") up until January 2005.  Plaintiff suffers from widespread fasciculations (involuntary muscle twitching) in his feet, calves, thighs and upper body.  To treat this condition, Plaintiff takes a medication called Baclofen, which has a sedating effect and renders him ineligible for medical certification by the Federal Aviation Administration ("FAA").

In 2005, Plaintiff applied for long-term disability ("LTD") benefits under American's

Long Term Disability Plan (the "Plan"). The Plan defines disability as "an illness or injury, verified through a qualified medical authority . . . which prevents a Pilot Employee from continuing to act as an Active Pilot Employee in the Service of the Employer." (Resp. 2, ECF No. 45). The Plan vests discretionary authority with a Pension Benefits Administration Committee ("PBAC") that has the power to determine benefits eligibility. At the time of Plaintiff's appeal, all appeals were submitted to Western Medical Evaluators ("WME"), an independent clinical authority, to make a binding decision as to the "nature and extent of [the] illness or injury." (*Id.* at 4).

On August 4, 2005, Dr. Thomas Bettes, American's Medical Director, found that Plaintiff was entitled to disability benefits under the Plan based upon his "medical inability to act as a pilot." However, when Plaintiff's benefits were reviewed in 2007, Dr. Alex Wolbrink of American's Occupational Health Services determined that Plaintiff no longer qualified as disabled under the Plan and terminated his benefits. Plaintiff appealed the decision to the PBAC. According to Defendants, Plaintiff's medical records were submitted to WME for review by a board-certified neurology specialist and a Senior Aeromedical Examiner. These independent physicians rendered medical opinions that Plaintiff did not meet the Plan terms for continuing disability; thus, the PBAC denied Plaintiff's appeal.

In November 2011, Plaintiff commenced this action against American alleging wrongful termination of disability benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, et seq. After discovery commenced in July 2011, American filed for Chapter 11 Bankruptcy. As a result, this case was stayed until the bankruptcy case was completed.

On September 10, 2014, the case was returned to the active docket, (ECF No. 39), and all

discovery motions were referred to the undersigned for disposition pursuant to 28 U.S.C. § 636(b)(1)(A), (ECF No. 41).

On November 14, 2014, Plaintiff filed the present Consolidated Motion to Compel Discovery pursuant to Fed. R. Civ. P. 37(a).  (ECF No. 43).  Defendants oppose Plaintiff's motion.  (ECF No. 45).  Plaintiff has submitted a Reply.  (ECF No. 48).

## II.     SCOPE OF DISCOVERY

The Federal Courts have broad discretion to manage discovery, *Sempier v. Johnson*, 45 F.3d 724, 737 (3d Cir. 1995), and it is well-recognized that the Federal Rules permit broad and liberal discovery.  *Pacitti by Pacitti. v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999).  The Federal Rules of Civil Procedure allow parties to obtain discovery regarding "any matter, not privileged, that is relevant to any party's claim or defense."  Fed. R. Civ. Pro. 26(b)(1).  However, in the ERISA context, the usual broad scope of discovery is limited by the statute's goal of a speedy, efficient resolution of claims.  *Sivalingam v. Unum Provident Corp.*, 735 F. Supp. 2d 189, 196 (E.D. Pa. 2010).

The scope of discovery in an ERISA case necessarily turns on the applicable standard of review employed by the courts. *Aquilino v. Hartford Life and Accident Ins. Co.,* No. 10-2044, 2010 WL 3505172 (E.D. Pa. Aug. 31, 2010).  When, as in this case, a disability plan grants the administrator discretionary authority to determine eligibility for benefits, this Court reviews a claimant's challenge to a termination of benefits under ERISA pursuant to an "abuse of discretion" or "arbitrary and capricious" standard.  *Firestone Tire and Rubber Co v. Burch*, 489 U.S. 101, 115 (1989); *Miller v. American Airlines, Inc.*, 632 F.3d 837, 845 and n.2 (3d Cir.

2011).  When courts apply an "arbitrary and capricious" standard of review, they are generally limited to reviewing the record available to the plan administrator at the time the benefits determination was made.  *Post v. Hartford Ins. Co*., 501 F.3d 154, 168 (3d Cir. 2007).  The Supreme Court has explained, however, that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion. " *Firestone*, 489 U.S. at 115; *see also Howley v. Mellon Financial Corp.*, 625 F.3d 788, 793 (3d Cir. 2010) (explaining that a reviewing court may also "consider evidence of potential biases and conflicts of interest that is not found in the administrator's record") (quotation marks omitted).  Therefore, an ERISA claimant may be granted limited discovery beyond the administrative record for the purpose of examining alleged conflicts of interest.  *Sivalingam*, 735 F. Supp. 2d at 195–96.

There are two types of conflicts that an ERISA fiduciary may face: structural and procedural.  *Id.* at 195.  "Structural conflicts" relate to financial incentives inherent in a plan's design, such as where the same entity both funds and administers a benefits plan.  *See Post,* 501 F.3d at 162; *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008) (explaining that a structural conflict emerges when the employer both funds the plan and evaluates the claims because every dollar provided in benefits is a dollar spent by the employer, and every dollar saved is a dollar in the employer's pocket).  "Procedural conflicts" pertain to the way in which the administrator arrives at its decision.  *Post*, 501 F.3d at 164–65.  "Procedural conflicts often take the form of biases, which may be evidenced in a number of ways, such as self-serving selectivity in the use and interpretation of expert reports or the administrator's ordering a medical examination despite overwhelming evidence of disability." *Sivalingam*, 735 F. Supp. 2d

at 195 (citing *Post*, 501 F.3d at 165).

In this case, Plaintiff asserts a structural conflict inherent in American's role in both administering and paying benefits from the Plan, and argues that he should be given fairly broad range to conduct discovery concerning "the extent to which the cost of benefits is known to and tracked by individuals involved in the decisions to grant or deny benefits, the steps taken by American Airlines to reduce potential bias, and the steps taken to promote accuracy in the decision-making process." (Memo. 16, ECF No. 43-4). Plaintiff also asserts that he has evidence suggesting potential procedural irregularities in American's decision-making process that warrant a greater range of discovery. The Court will address each of Plaintiff's document requests separately.

### III.   DISCUSSION

#### A.   Plaintiff's Request for Documents Concerning the Costs/Actuarial Soundness of the Plan and the Plan Sponsor

Plaintiff first moves the Court to compel Defendants to produce:

All documents analyzing, summarizing or otherwise evidencing the cost of the Plan, and/or the actuarial soundness of the Plan or of the Plan Sponsor which funded Plaintiff's disability benefits, including but not limited to:

a)   Any annual actuarial valuation report prepared for the Plan or the Plan Sponsor during the years 2005, 2006, 2007 and 2008;

b)   Any other actuarial reports assessing the cumulative assets and liabilities of the Plan or the Plan Sponsor during the years 2005, 2006, 2007 and 2008;

c)   Any documents referring to underfunding of the Plan;

       d)      Form 5500s for the Plan, for the year 2006.[1]

(Mot. 1, ECF No. 43).  In support of his request for these materials, Plaintiff argues that the "precipitous decline in American's financial condition" and its concern over the cost of its disability obligations is clearly relevant to the question of a structural conflict of interest. Plaintiff believes that a notation on the spreadsheet attached to the 2008 Form 5500, as well as deposition testimony from another claimant's ERISA case, suggest that actuarial and financial information was being shared with Deborah Jameson, a member of the Benefits Compliance group who was directly involved in the decision-making process of Plaintiff's appeal.

      In response, Defendants acknowledge that there is a presumed conflict of interest insofar as it both insures the Plan and administers its claims.  *See Metropolitan Life*, 554 U.S. at 114–15. Defendants contend, however, that the company's assets and liabilities have no bearing on any purported fiduciary's bias.  Defendants claim that discovery of "unremarkable" and "commonplace" actuarial reports concerning claims history and forecasting benefit obligations would "open the door to discovery in every case where benefits are self-funded — the lions share of benefits cases." (Resp. 9, ECF No. 45).  Defendants further claim that these actuarial reports are Plan Sponsor reports utilized for financial accounting having nothing to do with fiduciary decision-making.  Similarly, Defendants argue, Plaintiff's request for actuarial reports assessing the cumulative assets and liabilities of American Airlines as a company far exceeds the narrow scope of discovery allowed in ERISA cases because the company's assets/liabilities have

---

[1] Plaintiff admits that Defendants have produced the Form 5500s for 2007 and 2008. The Form 5500, "Annual Return/Report of Employee Benefit Plan," is the form used to file an employee benefit plan's annual reporting information with the Department of Labor.  *See* http://www.dol.gov/ebsa/5500main.html.

no bearing on any purported fiduciary's bias.

The Court will grant Plaintiff's request to compel Defendants to produce the documents identified in the requests at (a) and (b) above.[2]  Although Defendants contend that the financial status of the company and the Plan have no bearing on the fiduciary decision making, the Court agrees with Plaintiff that he is entitled to explore the extent to which the alleged structural conflict might have affected his benefits determination.  *See Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000) (explaining that discovery into factors such as "whether the company is stable" is appropriate when a structural conflict of interest is alleged)*; Post v. Hartford Ins. Co.*, 501 F.3d 154, 168–69 (3d Cir. 2007) (explaining that, in evaluating an administrator's conflict of interest, a court may consider evidence extrinsic to the administrative record such as evidence of the plan's funding mechanism); *see, e.g.*, *Emery v. American Airlines*, No. 10-290, 2010 WL 457151, at *3 (S.D. Fla. Feb. 4, 2010) (granting ERISA plaintiff's request for statistical information regarding the allowance or denial of claims by WME and a doctor who worked on behalf of American).  While the Court may ultimately be limited in what it can consider when adjudicating the merits of this matter, discovery need not be limited to matters of admissible evidence but may also include that which "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

With respect to time span of the requests, Plaintiff explains that he seeks financial information from 2005 and 2006 (as well as 2007 and 2008, when his eligibility under the Plan was under review) because "[t]he individuals involved with administering the Plan do not appear

---

[2]  Defendants claim that they have no documents responsive to the request at (c) because "the Plan is paid from the Company's general assets and therefore is not 'funded.'"  (Resp. 9, ECF No. 45).

to have changed over that time period, and therefore their knowledge of Plan funding in earlier years, and the deteriorating condition of [American] as time went on, could certainly have influenced their conduct in 2007 and 2008." (Memo. 19, ECF No. 43-4). Because these materials are less directly relevant to Plaintiff's claim, and because the Court remains mindful that discovery in this matter must be "circumscribed as to preserve ERISA's goal of providing an inexpensive and expeditious means of resolving benefit disputes," *Perry v. Simplicity Eng'g*, 900 F.2d 963, 967 (6th Cir. 1990), the Court will not compel Defendants to produce materials from 2005 and 2006.

### B.    Plaintiff's Request for Documents Concerning Defendants' Treatment of FAA Medical Certification in Other Pilot Disability Claims

Next, Plaintiff requests:

The following documents, but only to the extent such documents are contained in the long term disability files of other pilots:

(a)   All documents pertaining to any policy or regular practice, formal or informal, written or unwritten, pursuant to which Plan beneficiaries may be deemed ineligible for continued disability benefits, based on their pursuit (or non-pursuit) of Federal Aviation Administration ("FAA") medical recertification (Document Request 2(g)); and

(b)   All documents pertaining to any policy or practice, formal or informal, written or unwritten, pursuant to which Plan beneficiaries may be deemed eligible or ineligible for LTD benefits, based on their inability to obtain FAA medical recertification.

(Mot. 19, ECF No. 43-4). Plaintiff contends that this is a narrow request, but one critical to this case because of the fact that Plaintiff cannot receive FAA medical certification due to the drug Baclofen. Plaintiff claims that Defendants, in denying his appeal, took the "facially frivolous position" that the fact that he must take a medication that disqualifies him from receiving his FAA medical certification (which he is required to have in order to work as a pilot) "is irrelevant

to a claim for benefits under the Plan because the certification relates to licensure, not disability." (Memo. 4, ECF No. 43-4). Plaintiff contends that, based on evidence he has obtained from other pilot disability cases, Defendants interpret the relationship between FAA medical certification and disability under the Plan differently when it suits their interest in denying a claim. Specifically, Plaintiff claims that Dr. Bettes testified in another matter that "[i]f medical information [were] provided to FAA that was a full disclosure, and the employee had been denied certification, most typically that would lead to the approval of disability." (Reply 5 and Exh. A, ECF No. 48). According to Plaintiff, inconsistency in administration of the Plan is a procedural irregularity that can only be explored by seeing how Defendants addressed the medical certification issue in other cases.[3]

In response, Defendants state that they have produced all documents generally discussing the Plan terms and the lack of correlation with FAA certification. Defendants insist that, to their knowledge, no pilot was deemed eligible or ineligible for benefits under this Plan based on his or her inability to obtain FAA certification, and no such "policy or practice" exists. (Resp. 11, ECF No. 45). Defendants explain that although numerous pilots, including Plaintiff, have submitted documentation from the FAA showing that it determined the pilot ineligible for medical certification as part of their appeal materials, the FAA's certification determination is irrelevant to the PBAC's appeal decision on pilot disability. Defendants also contend that vast and expensive discovery into other pilots' claims would be at odds with the goals of efficiency and inexpensive resolution of ERISA claims, and that redaction of certain personal information

---

[3] Plaintiff notes that he does not object to any redaction of personal identifiers from the documents produced.

would not sufficiently protect the pilots' privacy.

The Court will deny Plaintiff's request. Given that, in this case, American represented to Plaintiff that his inability to obtain FAA certification had nothing to do with his disability determination, the Court agrees with Plaintiff that any documents evidencing that American had a policy or practice of basing disability eligibility determinations on FAA certification would reveal a procedural irregularity. Defendants assert, however, that no such policy or practice exists. Although Plaintiff provides deposition testimony from Dr. Bettes indicating that there is an interplay between FAA certification and disability determinations, this excerpt alone is insufficient for the Court to discredit Defendants' contention here that it does not possess documents responsive to this request. To the extent that Plaintiff argues that the only way he can see how American actually treated the question of FAA medical certification in other pilots' disability cases is to examine their claim files, he does not specify which documents (other than those relating to the purported policy or practice) he seeks to review. Accordingly, the Court will deny Plaintiff's motion to compel documents responsive to this request.

### C. Plaintiff's Request for a List of Other LTD Cases in which American Employees Testified

Plaintiff next requests production of:

> A list, by name of witness, case caption, date of testimony or deposition, and name of address of plaintiff's attorney, of all transcripts of testimony (whether deposition or hearing) given by each of the following individuals in any case dealing with LTD claims under the Plan or under any predecessor plan which provided long term disability benefits to pilots of American: Deborah Jameson, Sarah Funk, Charlotte Teklitz, Dr. Alex Wolbrink, Jeanne Spoon, R.N., Dr. Thomas Bettes, and Susan Roberson. Following production of such list, and upon receipt from Plaintiff of a release signed by the plaintiff in whose case the deposition or testimony was given, the production of a copy of each such transcript to Plaintiff's counsel who agrees not to further distribute such transcript to anyone without further order of this Court.

(Mot. 20, ECF No. 43-4). Plaintiff explains that these individuals, who were directly involved in reviewing his disability claim, testified in other cases about the Plan and/or predecessor LTD plans. Plaintiff claims that their testimony "should be discoverable to the extent it might show that [Plaintiff's] claim was treated differently than others, or to the extent [these individuals] might have testified concerning matters relating to structural conflicts or procedural errors." (Memo. 21, ECF No. 43-4). In order to ensure that private medical information is not disclosed without proper consent, Plaintiff proposes that, after he receives the list of cases, he will obtain consent from the plaintiff pilot in each particular case before reviewing the requested transcripts. Plaintiff further states that he will not distribute the transcripts to anyone else without order of the Court.

Given that, as discussed below, we will grant Plaintiff's request for leave to depose each of these individuals, the Court finds that it is not necessary for Defendants to create the requested list.[4] To the extent Plaintiff seeks information from these deponents that is directly relevant to his claims of structural and procedural conflicts, he will be able to inquire it of them directly. Accordingly, Plaintiff's motion to compel will be denied in this regard.

### D. Plaintiff's Deposition Requests

Finally, Plaintiff requests leave to depose Dr. Thomas Bettes, Dr. Alex Wolbrink, Nurse Jeanne Spoon, Deborah Jameson, Charlotte Teklitz, and Sue Ann Roberson in order to explore

---

[4] Plaintiff seeks to depose all of the individuals identified in this request except Sarah Funk, an administrator who assists Ms. Teklitz and Ms. Jameson in the appeal process. (Memo. 21, ECF no. 43-4). Plaintiff has not sufficiently explained the role that Ms. Funk played in either other benefits determinations or his own. Therefore, his request for a list of her prior depositions will be denied.

the issues discussed above concerning structural conflict and procedural irregularities.[4]  In response, Defendants argue that Plaintiff, by requesting to depose Dr. Bettes and Dr. Wolbrink, "seeks to second guess the merits of the decision as to his benefits, which is beyond the scope of discovery" in an ERISA benefits claim.  (Resp. 16, ECF No. 45).  Defendants further argue that Nurse Spoon, who created a chart tracking pilot disability claims that contained a "cost savings" column, and requested the creation of another chart tracking nurse case management savings, does not have information relevant to Plaintiff's case because the spreadsheets were never shared with the individuals involved in deciding the appeal.  (*Id*. at 16–17).  With respect to Ms. Jameson and Ms. Teklitz, Defendants concede that they were involved in deciding Plaintiff's appeal, but dispute that depositions of these individuals are necessary.[5]

Because Plaintiff confirms that he intends to inquire only into matters related to potential bias and conflicts of interest that might have affected the outcome of his benefits determination, the Court sees no basis to preclude these depositions.  *See, e.g.*, *Charles v. UPS Nat. Long Term Disability Plan*, No. 12-06223, 2013 WL 6080163, at *2 (E.D. Pa. Nov. 19, 2013) (permitting

---

[4]  Plaintiff explains that: (1) Dr. Bettes, American's medical director, made the determination as to whether he met the medical criteria for the Plan; (2) Dr. Wolbrink is an "area medical director" who reported to Dr. Bettes and was "intimately involved" in the decision to terminate his benefits; (3) Nurse Spoon is a nurse in American's medical department who was "deeply involved with Plaintiff's claim," (4) Ms. Jameson works directly for Ms. Teklitz, handles all aspects of the appeals process, and drafts the appeal decision for Ms. Teklitz; (5) Ms. Teklitz is the individual charged with responsibility for deciding appeals under the Plan (6) Ms. Roberson is a financial analyst with direct responsibility for accumulating and reporting financial and actuarial information regarding the Plan, and calculated and distributed the cost savings information in some of the spreadsheets.  (Memo. 5, 20–21, ECF No. 43-4).

[5]  Defendants explain that, in an effort to compromise, they agreed to depositions of Ms. Jameson, Ms. Teklitz, and Dr. Wolbrink, but Plaintiff rejected their offer.  (Resp. 14–15, 17–18, ECF No. 45).

deposition of the senior appeals specialist relating to potential bias and conflicts of interest which might have affected the outcome of the plaintiff's benefits determination).

## IV.     CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Compel is granted in part and denied in part. An appropriate Order follows.

BY THE COURT:


 /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE